UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BIN LI, Individually and On Behalf of All Others Similarly Situated,

*Plaintiff*,

v.

EQONEX LIMITED, BINANCE GROUP, BIFINITY UAB, JONATHAN FARNELL, DANIEL LING, ALMIRA CEMMELL, YU HELEN HAI, and ZHAO CHANGPENG,

*Defendants*.

No. 23 Civ. 03346 (GHW)

---

**REPLY MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

CAHILL GORDON & REINDEL LLP
Samson A. Enzer
Edward N. Moss
Victoria H. Yuhas
32 Old Slip
New York, New York 10005
(212) 701-3000

*Counsel for Defendants Binance, Bifinity, Jonathan Farnell, Daniel Ling, Almira Cemmell, Yu Helen Hai, and Changpeng Zhao*

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ....................................................................................... 1

**ARGUMENT** ................................................................................................................... 1

**I.** **THERE IS NO ACTIONABLE MISSTATEMENT OR OMISSION** ............................. 1

**II.** **THE COMPLAINT FAILS TO ADEQUATELY ALLEGE SCIENTER** ...................... 5

    **A.** **The Complaint Does Not Plead Motive to Commit Fraud** ............................................ 5

    **B.** **The Complaint Fails to Allege Facts That Constitute Strong Circumstantial Evidence of Conscious Misbehavior or Recklessness** ...................................... 6

**III.** **THE COMPLAINT FAILS TO ADEQUATELY ALLEGE LOSS CAUSATION** .... 8

**IV.** **THE CLAIMS FAIL AGAINST EACH DEFENDANT FOR OTHER REASONS** .. 9

    **A.** **Plaintiffs Fail to State Section 10(b) Claims Against Hai and Farnell** ......................... 9

    **B.** **Plaintiffs' Section 20(a) Claims Fail as to All Defendants** ........................................... 10

**V.** **THE COMPLAINT FAILS TO ESTABLISH PERSONAL JURISDICTION** ............ 10

**CONCLUSION** ............................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Berdeaux* v. *OneCoin Ltd.*,
  561 F. Supp. 3d 379 (S.D.N.Y. 2021)...................................................................................10n

*In re Braskem S.A. Sec. Litig.*,
  246 F. Supp. 3d 731 (S.D.N.Y. 2017).....................................................................................10

*Campo* v. *Sears Holdings Corp.*,
  371 F. App'x 212 (2d Cir. 2010) ......................................................................................... 4-5

*In re Citigroup Sec. Litig.*,
  2023 WL 2632258 (S.D.N.Y. Mar. 24, 2023) ..........................................................................5

*In re Columbia Tuition Refund Action*,
  523 F. Supp. 3d 414 (S.D.N.Y. 2021)......................................................................................4

*Faulkner* v. *Verizon Commc'ns, Inc.*,
  156 F. Supp. 2d 384 (S.D.N.Y. 2001).................................................................................8, 8n

*Felske* v. *Hirschmann*,
  2012 WL 716632 (S.D.N.Y. Mar. 1, 2012) ..............................................................................2

*Furlong Fund LLC* v. *VBI Vaccines, Inc.*,
  2016 WL 1181710 (S.D.N.Y. Mar. 25, 2016) ..........................................................................3

*Greco* v. *Qudian Inc.*,
  2022 WL 4226022 (S.D.N.Y. Sept. 13, 2022) (Woods, J.) ................................................6, 10

*Kleinman* v. *Elan Corp.*,
  706 F.3d 145 (2d Cir. 2013)....................................................................................................3n

*Lee* v. *Mikimoto (Am.) Co. Ltd.*,
  2023 WL 2711825 (S.D.N.Y. Mar. 30, 2023) ...........................................................4, 6, 10n

*Leykin* v. *AT&T Corp.*,
  423 F. Supp. 2d 229 (S.D.N.Y. 2006)......................................................................................9

*In re Lululemon Sec. Litig.*,
  14 F. Supp. 3d 553 (S.D.N.Y. 2014)........................................................................................9

*Novak* v. *Kasaks*,
  216 F.3d 300 (2d Cir. 2000).....................................................................................................3

*In re Pfizer Inc. Sec. Litig.*,
  819 F.3d 642 (2d Cir. 2016).....................................................................................................9

*Saraf* v. *Ebix, Inc.*,
  632 F. Supp. 3d 389 (S.D.N.Y. 2022)................................................................................5

*In re Symbol Techs., Inc. Sec. Litig.*,
  2013 WL 6330665 (E.D.N.Y. Dec. 5, 2013) ...................................................................7

*Union Cent. Life Ins. Co.* v. *Ally Fin., Inc.*,
  2013 WL 2154381 (S.D.N.Y. Mar. 29, 2013) .................................................................7

**Statutes**

15 U.S.C. § 78u-4(b)(2)(A).................................................................................................5

## PRELIMINARY STATEMENT

The federal securities laws do not permit class action plaintiffs to sue for damages based on claims of fraud by hindsight, or to cry fraud by inventing "facts" and then asserting they were omitted. Yet Plaintiffs' Opposition confirms that is precisely what they are trying to do here.[1]

Plaintiffs' securities fraud claims rest on challenges to (i) heavily caveated statements that two companies had entered into non-binding discussions about a possible merger, and (ii) vague statements of corporate optimism about the potential benefits of a strategic partnership. Plaintiffs' purported basis for claiming these garden-variety statements were fraudulent is that Defendants supposedly omitted that the parties never intended to merge, and never intended for the strategic partnership to work out. The problem, however, is that Plaintiffs have conjured these supposedly omitted "facts" out of thin air—based only on the subsequent events that the parties never merged and the partnership was not as successful as had been hoped. That things did not turn out as planned is not securities fraud. Neither are conspiracy theories or conjecture that disappointing outcomes were actually planned all along. The Court should dismiss the Complaint in its entirety.

## ARGUMENT

## I.  THERE IS NO ACTIONABLE MISSTATEMENT OR OMISSION

Because the Complaint merely copies and pastes large swaths of two press releases and does not specify which statements Plaintiffs claim were false or misleading, Defendants attempted to decipher and address Plaintiffs' theory of fraud by grouping the statements in those releases into

---

[1] Unless otherwise specified, "Opposition" or "Opp." means Plaintiffs' opposition (ECF No. 49) to Defendants' motion to dismiss ("MTD") (ECF No. 47), and all (i) emphasis is added, (ii) internal citations and quotations are omitted, and (iii) capitalized terms have the meanings assigned in Defendants' memorandum of law in support of their MTD.

three sets: (i) statements about the loan; (ii) statements about the non-binding merger discussions; and (iii) statements about the strategic partnership.  (*See* MTD at 4-5).

Plaintiffs now claim that they are pursuing only two statements:  (i) "that there was the possibility of a merger between Eqonex and Bifinity" (the "Merger Statement"), and (ii) "that the Strategic Partnership would support Eqonex" (the "Strategic Partnership Statement").  (*See* Opp. at 9, 14).  Plaintiffs' failure to respond to Defendants' arguments about the others is a waiver.  *See Felske* v. *Hirschmann*, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012) ("A plaintiff effectively concedes a defendant's arguments [in a motion to dismiss] by his failure to respond to them.").

In any event, neither of the two statements is actionable.  As Defendants demonstrated in their MTD, Plaintiffs have failed to plead facts showing that either statement was false, and the Strategic Partnership Statement is not actionable for the additional reasons that it is mere corporate puffery and protected by the PSLRA's safe harbor.  (*See* MTD at 8-15).

Plaintiffs' Opposition does not meaningfully respond to these arguments.  Instead, Plaintiffs claim that the two statements omitted that "the Strategic Partnership was simply a means for Binance, through Bifinity, to gain control of Eqonex and its FCA-regulated operating unit Digivault, and Defendants never intended to merge with Eqonex, but only to use it to circumvent the FCA." (Opp. at 9).  Plaintiffs plead no facts to support this speculative theory.  Instead, they divine this implausible conjecture from the following series of unremarkable events, virtually all of which happened months *after* the challenged statements were made: (i) Eqonex was ultimately unable to repay the $36 million loan that Bifinity extended in connection with the strategic partnership; (ii) Eqonex's Exchange closed; (iii) Eqonex and Bifinity never merged; (iv) Bifinity ultimately obtained 100% of Digivault; and (v) Binance has allegedly tried to circumvent regulators before.  (*Id.* at 11-12).  None of that is sufficient to sustain a securities fraud claim.

2

*First*, none of these later events demonstrates that there were omissions of material facts when the statements sued upon were made.  Although Plaintiffs speculate that Defendants knew all along that the strategic partnership was a ruse, the loan could never be repaid, and the parties would never merge, they allege no facts to support that conjecture.  This is classic fraud by hindsight.  *See Novak* v. *Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) ("Corporate officials need not be clairvoyant; they are only responsible for revealing those material facts reasonably available to them.").

*Second*, Defendants expressly warned that the potential merger might never happen. Eqonex disclosed that the parties were in "non-binding discussions" in order "to explore potential merger opportunities," and that any potential merger would be "subject to regulatory approval." (AC ¶ 48).  Similarly, in an April 29, 2022 filing with the SEC,[2] Eqonex warned that the loan agreement "[did] not obligate [the parties] to enter into definitive binding agreements or complete the [potential merger] on such terms or at all."  (Yuhas Decl., Ex. 4).

*Third*, in addition to being entirely speculative, Plaintiffs' theory is implausible.  *See Furlong Fund LLC* v. *VBI Vaccines, Inc.*, 2016 WL 1181710, at *4-5 (S.D.N.Y. Mar. 25, 2016) (dismissing "implausible" Exchange Act claims).

According to Plaintiffs, Bifinity's plan was to keep the Exchange open for several months, then shutter it to cut off Eqonex's revenue stream so that it could not repay the loan, and finally use the breach of the loan agreement to negotiate a deal to acquire all of Digivault.  (*See* Opp. at 11).  But this tale simply does not hang together.

---

[2] The Court can consider on this motion the SEC filings cited in this brief, including the loan agreement referenced below.  *See Kleinman* v. *Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).

3

As an initial matter, the Complaint has no plausible explanation for why the Exchange was kept open for several months—which actually demonstrates that the statement that Defendants intended to "strengthen" the Exchange was true when made.  Now that they have been confronted with this hole in their story, Plaintiffs speculate in the Opposition that Defendants only kept the Exchange open for five months because "they were not yet ready to give up its revenue."  (Opp. at 13).  But that allegation is insufficient to establish falsity because: (i) it does not actually appear in the Complaint, and Plaintiffs "cannot amend [their] complaint by asserting new facts or theories for the first time in opposition to a motion to dismiss," *Lee* v. *Mikimoto (Am.) Co.*, 2023 WL 2711825, at *7 (S.D.N.Y. Mar. 30, 2023); and (ii) it is inconsistent with Plaintiffs' own theory that "all Defendants wanted was Digivault" (Opp. at 1), *see In re Columbia Tuition Refund Action*, 523 F. Supp. 3d 414, 424 n.1 (S.D.N.Y. 2021).

Moreover, Plaintiffs' argument that closing Eqonex's Exchange "***enabled*** [Defendants] to increase Bifinity's share charge of Digivault to 100%" (Opp. at 11) has no basis in the loan agreement, which was publicly filed with the SEC, *see* (Yuhas Decl., Ex. 1).  That agreement contains no promise, nor does it even imply, that Bifinity's percentage of Digivault would increase as a result of granting "a waiver for the cessation of a major business."  (AC ¶ 12).

In addition, the idea that Defendants' alleged master plan required getting rid of the Exchange to take control of Digivault contradicts Plaintiffs' own claim that Defendants "accomplished their goal of taking over Digivault immediately through the initial $36 million payment and takeover of Eqonex's executive suite."  (Opp. at 12).

*Fourth*, Plaintiffs proffer no valid basis for their claim that the strategic partnership was merely a way for Binance to evade the FCA.  Their only support for this claim are allegations that Binance has tried to evade regulators in other contexts before.  That is not sufficient to plead an

4

actionable omission.  *See Campo* v. *Sears Holdings Corp.*, 371 F. App'x 212, 215 (2d Cir. 2010) (finding that plaintiffs' references to press articles were insufficient to establish fraud because the articles amounted to "mere speculation"); *see also Saraf* v. *Ebix*, *Inc.*, 632 F. Supp. 3d 389, 400-01 (S.D.N.Y. 2022) (concluding that "previous instances in which [defendant] was accused of misconduct, including undisclosed tax investigations" did not support the alleged fraud claim).

Having abandoned most of their alleged misstatements, and having conceded that the two statements they rely on are actually true, Plaintiffs fall back on the mantra that Defendants are impermissibly "parsing" their allegations and refusing to consider "context." (Opp. at 13-14).  The problem, however, is that the supposed "context" is simply the stuff of Plaintiffs' imagination. *See In re Citigroup Sec. Litig.*, 2023 WL 2632258, at \*20 (S.D.N.Y. Mar. 24, 2023) (rejecting misrepresentation claim because plaintiff "offer[ed] nothing beyond conjecture").

## II.    THE COMPLAINT FAILS TO ADEQUATELY ALLEGE SCIENTER

As Defendants demonstrated in their MTD, with no confidential witnesses, no facts showing that any statement was false when made, and no motive to commit securities fraud, the Complaint falls far short of alleging the "strong inference" of scienter that the PSLRA demands. 15 U.S.C. § 78u-4(b)(2)(A).  Plaintiffs' Opposition does nothing to rebut this showing.

### A.    The Complaint Does Not Plead Motive to Commit Fraud

Searching for some motive, Plaintiffs argue that "Defendants were motivated to enter into the Strategic Partnership so they could circumvent the FCA ban" and "gain access to the regulated UK market through Digivault." (Opp. at 16).  Plaintiffs fail to explain how this is a motive to commit securities fraud (rather than, for example, a motive to mislead the FCA).  In any event, this theory is fatally flawed and cannot support an inference of scienter.

To begin, this theory makes no sense.  The Complaint alleges that Defendants could have and ***did*** come to control Digivault through the loan agreement alone.  (*See, e.g.*, *id.* at 14 n.8

("Binance **gained control** of Digivault through the Strategic Partnership; no additional steps were necessary.")). Thus, by the time the loan agreement was disclosed, Defendants had allegedly already achieved their supposed clandestine goal.

Undeterred, Plaintiffs argue that Defendants were "motivated to keep up the illusion that they were simply in a Strategic Partnership with Eqonex with the possibility of a merger so that they could work on convincing the FCA to sanction a change in control of Digivault, which would then allow them to take a 100% share charge in Digivault." (*Id.* at 16-17). This argument is easily rejected. *First*, the theory that Defendants were biding time to "convinc[e] the FCA to sanction a change in control of Digivault" (*Id.* at 16-17) does not appear anywhere in the Complaint, and Plaintiffs cannot amend the Complaint through an opposition brief. *See Mikimoto*, 2023 WL 2711825, at *7. *Second*, even if Plaintiffs had properly raised this theory, they still fail to explain how Defendants would have obtained any benefit from increasing their share of Digivault if, as Plaintiffs allege, Defendants gained control of Digivault "immediately" and "no additional steps were necessary" to capture it. (*See* Opp. at 12, 14 n.8; *see also* AC ¶ 67). *Finally*, it makes absolutely no sense that Defendants were secretly trying to circumvent the FCA ban on Binance by taking control of Digivault, **while at the same time trying to convince the FCA that it should allow Binance to take control of Digivault**. Plaintiffs' motive theory fails.

### B. The Complaint Fails to Allege Facts That Constitute Strong Circumstantial Evidence of Conscious Misbehavior or Recklessness

The Opposition also makes plain that the Complaint fails to allege any facts suggesting that any Defendant knew or recklessly disregarded that any statement was false or misleading.

*First*, Plaintiffs argue that because "Defendants' job was to carry out Binance's intentions," this Court can conclude "that they knew those intentions." (Opp. at 18). This is textbook group pleading. *See Greco* v. *Qudian Inc.*, 2022 WL 4226022, at *26 (S.D.N.Y. Sept. 13, 2022) (Woods,

J.) ("Scienter, however, cannot be inferred solely from the fact that, due to the defendants' board membership or executive managerial position, they had access to the company's internal documentation as well as any adverse information.").[3]  Moreover, the only support for Binance's supposed "intentions" is Plaintiffs' say-so.

*Second*, Plaintiffs point to a press report and accusations about other matters that have nothing to do with Eqonex to argue that the Court can infer scienter in this case from Binance's supposed "pattern" of misconduct.  (Opp. at 17-18).  Defendants demonstrated that this type of unsubstantiated and unrelated character evidence is not sufficient to allege a strong inference of scienter.  (MTD at 17-18).  Plaintiffs try to compare their allegations to those in *In re Symbol Techs., Inc. Sec. Litig.*, 2013 WL 6330665 (E.D.N.Y. Dec. 5, 2013) (Opp. at 18), but in that case, the referenced charges concerned the ***exact*** events that formed the basis of the complaint, and several defendants had actually admitted to those charges.  *Symbol Techs*, 2013 WL 6330665, at *1-2, 10 n.3 (concluding that "the ***admitted*** prior misconduct establishe[d] a pattern of culpable conduct").  That is far afield from the Complaint's allegations here, which consist only of (i) unproven accusations that (ii) do not concern Eqonex or the merger discussions, and (iii) only concern two of the seven defendants.  (Opp. at 18).  These allegations do not support a strong inference of scienter.  *See Union Cent. Life Ins. Co.* v. *Ally Fin., Inc.*, 2013 WL 2154381, at *1 (S.D.N.Y. Mar. 29, 2013) ("Plaintiffs' citation to a number of lawsuits and government investigations involving [defendant] provides no evidence of scienter.").

In sum, Plaintiffs' theories of fraud rest on implausible speculation.  The far more plausible inference is that the parties simply decided not to merge after engaging in some non-binding

---

[3] Plaintiffs' related claim that Bifinity was "created" on March 7, 2022 to further Binance's alleged master plan of capturing Digivault (Opp. at 17) is refuted by Plaintiffs' own allegations: the Complaint asserts that Bifinity existed in 2021 (AC ¶ 6).

exploratory discussions, and the strategic partnership was not as successful as planned.  That is not

securities fraud.  *See Faulkner* v. *Verizon Commc'ns, Inc.*, 156 F. Supp. 2d 384, 394 (S.D.N.Y.

2001) (rejecting plaintiffs' theory of liability because they had "confused an innocent motive to

terminate [the merger] with the requisite motive to defraud").[4]

## III.    THE COMPLAINT FAILS TO ADEQUATELY ALLEGE LOSS CAUSATION

Defendants demonstrated in their MTD that Plaintiffs cannot adequately allege loss

causation because there is a fundamental mismatch between the alleged omissions and "corrective

disclosures."  Indeed, the supposedly omitted information—that the merger discussions and

strategic partnership were all part of some ruse—was never even disclosed (because it is made up).

Plaintiffs' Opposition confirms this.  Plaintiffs argue that the following announcements

revealed to investors that Defendants' plan all along was to gut Eqonex and run away with

Digivault: (i) Eqonex's August 15, 2022 announcement that the Exchange was closing; and (ii)

Eqonex's November 21, 2022 announcement[5] that it was in breach of the loan agreement and may

not be able to "continue as a going concern."  (Opp. at 19).

But these disclosures said no such thing.  In fact, as Plaintiffs note, the August 15 release

actually communicated continued optimism about the strategic partnership—in particular, that

closing the Exchange "would 'improve the Company's financial position' and was 'the right

---

[4] Plaintiffs attempt to distinguish *Faulkner*, where the court held that plaintiffs had not adequately alleged securities fraud, because Verizon was justified in backing out of a merger since market conditions had changed, *see Faulkner*, 156 F. Supp. 2d at 400, whereas the parties here supposedly had no legitimate justification. (*See* Opp. at 12-13).  Putting aside that Plaintiffs cannot draw a distinction by simply making up a reason why the merger here did not happen, *Faulkner* actually supports Defendants.  In *Faulkner*, the parties had entered into a merger agreement and assured investors they would close (and the claim was still dismissed), but here, the parties were merely talking about a possible merger and expressly warned (even though that was obvious) that the talks might not result in a deal.  (*See* MTD at 10-11).

[5] Defendants note that the "November 21, 2022" disclosure that the Complaint references appears to have actually been filed on November 15, 2022.  (*See* Mar. 4, 2024 Supplementary Declaration of Victoria H. Yuhas, Ex. 1).  For ease of reference, Defendants will refer to the November 15 filing using Plaintiffs' date.

decision to deliver shareholder value.'" (*Id.* at 6).  Moreover, all the November 21 announcement revealed was that Eqonex was having financial trouble.  Naturally, a price drop followed this new, negative news, but that is not enough to plead loss causation.  *See Leykin* v. *AT&T Corp.*, 423 F. Supp. 2d 229, 245 (S.D.N.Y. 2006) ("[L]oss causation is not pled upon allegations of drops in stock price following an announcement of bad news that does not disclose the fraud.").

## IV.      THE CLAIMS FAIL AGAINST EACH DEFENDANT FOR OTHER REASONS

### A.      Plaintiffs Fail to State Section 10(b) Claims Against Hai and Farnell

Defendants Hai and Farnell cannot fairly be said to have "made" either of the two statements on which Plaintiffs rely because (i) neither individual worked for Eqonex on March 7 when the statements were issued (AC ¶¶ 28, 31); (ii) neither individual signed the press release (*see* Yuhas Decl., Ex. 6); and (iii) Plaintiffs have not offered any facts to support their conclusory allegation that Hai and Farnell controlled the alleged misstatements.

Plaintiffs rely on *In re Pfizer Inc. Sec. Litig.*, 819 F.3d 642 (2d Cir. 2016), a summary judgment case in which the court found that Pfizer might have "made" other companies' statements to the press.  *Id.* at 657-58.  But the evidence there included documents and testimony indicating that the relevant press communications could not go "out the door" without Pfizer's approval.  *Id.*  That is not even close to the situation here, where Plaintiffs have not offered a ***single*** non-conclusory allegation of Defendants' involvement in preparing the press releases.  *See In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 576 n.14 (S.D.N.Y. 2014) (concluding that an individual director defendant could not be held liable for alleged misstatements where there were no "particularized allegations that he had any role in shaping their content").

### B.  Plaintiffs' Section 20(a) Claims Fail as to All Defendants

Even if Plaintiffs had adequately alleged a primary violation (they have not), Plaintiffs' Section 20(a) claims still fail because, as discussed above, the Complaint lacks **any** substantive scienter allegations about **any** specific Defendant.  *See Greco*, 2022 WL 4226022, at \*26.

In addition, Plaintiffs' claims of "control" are boilerplate and conclusory:

- ***Bifinity*** supposedly controlled Eqonex's statements because Bifinity had "full control over Eqonex's executive management, as well as two seats on its Board."  (Opp. at 21).

- ***Binance*** and ***Zhao*** allegedly controlled Eqonex because Binance and Zhao controlled Bifinity.  (*Id.* at 21-22).

- ***Farnell***, ***Hai***, ***Ling***, and **Cemmell**—despite not starting their positions with Eqonex until March 17, April 28, and March 31 (AC ¶¶ 28-31)—all supposedly controlled statements that Eqonex made on March 7 because "Eqonex and Bifinity had already . . . established Bifinity's control of [Eqonex]." (Opp. at 21).

Plaintiffs cannot sufficiently allege that Defendants are control persons simply by claiming that they are.  *See In re Braskem S.A. Sec. Litig.*, 246 F. Supp. 3d 731, 771 (S.D.N.Y. 2017).

## V.   THE COMPLAINT FAILS TO ESTABLISH PERSONAL JURISDICTION

Plaintiffs cannot establish personal jurisdiction over Defendants because, as in *Braskem*, Plaintiffs do not offer a single non-conclusory allegation of Defendants' involvement in making the two alleged misstatements.  *See Braskem*, 246 F. Supp. 3d at 770 ("[The complaint did] not allege, concretely, that [defendant] played *any* role in making, proposing, editing or approving[.]") Plaintiffs' continued reliance on textbook group pleading does not suffice.[6]  (*See* Opp. at 23).

### CONCLUSION

For the reasons set forth above, the Court should dismiss the Complaint with prejudice.

---

[6] Plaintiffs cannot rely on the criminal case against Binance and Zhao (Opp. at 22-23) to establish personal jurisdiction over the five remaining Defendants because "[a] plaintiff must carry his burden with respect to each defendant individually," *Berdeaux* v. *OneCoin Ltd.*, 561 F. Supp. 3d 379, 396 (S.D.N.Y. 2021), and because it is not referenced in the Complaint.  *See Mikimoto*, 2023 WL 2711825, at \*7.

Dated: March 4, 2024
    New York, New York

Respectfully submitted,

CAHILL GORDON & REINDEL LLP

By:    */s Samson A. Enzer*
      Samson A. Enzer
      Edward N. Moss
      Victoria H. Yuhas
      32 Old Slip
      New York, New York 10005
      (212) 701-3000

*Counsel for Defendants Binance, Bifinity, Jonathan Farnell, Daniel Ling, Almira Cemmell, Yu Helen Hai, and Changpeng Zhao*

11